**UNITED STATES of America,**

v.

**Larry STULER, Appellant.**

**No. 01–3914.**

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) May 3, 2002.

Filed June 25, 2002.

Before ROTH and STAPLETON, Circuit Judges, and POLLAK,* District Judge.

* Honorable Louis H. Pollak, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

## OPINION OF THE COURT

STAPLETON, Circuit Judge.

Appellant Larry Stuler was convicted of willful failure to file federal income tax returns in 1994, 1995 and 1996. He was sentenced to two years of imprisonment, one year of supervised release, and a fine of $20,000.

### I.

■ During individual voir dire, each juror selected gave a negative response to the following questions:

> Do you have such strong feelings about the tax laws, or the tax system of the United States, or the IRS that your feelings would prevent you from rendering a fair and impartial verdict in this case?

> Do you have such strong feelings about individuals who have not filed income tax returns, and/or not paid income taxes, or who belong to organizations that seek evasion or abolition of the individual income tax laws, that your feelings would prevent you from rendering a fair and impartial verdict in this case?

Each of the jurors selected took the customary oath to "well and truly try this case ... and a true verdict render according to the evidence and the law as given to you by the Court." App. II at 182; App. III at 664.

At the conclusion of evidence, the Court instructed the jury, *inter alia*, that it was the Court's job to determine the rules of law which they must follow even if they disagreed with them and that it is the Court's job to decide punishment and they should not consider or discuss it.

On July 19, 2001, after deliberating for approximately four hours, the jury sent a note indicating they were at an impasse, and the Court delivered the following instruction in response without objection:

> It is desirable if a verdict can be reached, but your verdict must represent the conscientious judgment of each juror. It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence in the case with your fellow jurors.
>
> In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict.
>
> While you may have honest differences of opinion with your fellow jurors, during the deliberations, each of you should seriously consider the arguments and opinions of the other jurors. Do not hesitate to change your opinion, if after discussion of the issues and consideration of the facts and evidence in this case you are persuaded that your initial position is incorrect.
>
> However, I emphasize that no juror should vote for a verdict unless it represents his or her conscientious judgment.

App. III at 647–48.

During the second day of deliberations, after approximately three hours of deliberation, the jury sent the following note to the Court:

7/20/01

*Your Honor-*

As a sworn juror, I/we feel obligated to bring to the Court's attention a significant matter. On page 3 of your instructions, our "... sworn duty is to decide the case without bias, or prejudice, to any party. The law does not permit (us) to be governed by sympathy, prejudice, bias, or public opinion. Both the accused and the public expect that (we) will carefully and impartially consider all evidence in the case, follow the *law*[1] *as stated by the Court*[1] and reach a just verdict based on the evidence, without regard for the *consequences.*[2]" Also, on page 1, "anything you may have seen, or heard, outside the courtroom is *not evidence*[3] *and must be entirely disregarded.*[3] (Our) decision in this case must be made solely on the evidence presented at the trial."

I/we recognize the last sentence of the Court's instructions: "I caution you, however, ... you should never state or specify (the) numerical division at that time." I/we assure the Court that I/we have done my best to make certain the "numerical division" is *not* made known. I/we have a fellow juror/jurors who have answered *yes* to each of the three elements outlined on page 13; however, because of his/her or their "votes and feelings against the system and Constitution and the defendant's right to protest" he/she or they will *not* vote guilty or would rather abstain.

I/we have repetitively re-read the Court's instructions, as well have carefully presented all evidence to him/her or them. Particularly, page 17, "If you find from your consideration of all of the evidence that the government has proved beyond a reasonable doubt each and every one of the elements discussed above with regard to any of the counts

set forth in the indictment, then you should find the defendant *guilty* as to the count."

Respectfully,

Sean Rollman

(Read and submitted by *all* jurors)

*Footnotes*

[1] He/she or they don't agree with the law as stated by the Court's instructions.

[2] He/she or they do not want the defendant to serve a jail term.

[3] Individual/individuals are relying on past items he/she or they have heard about the Constitution in an encyclopedia.

Also, he/she or they are basing his/her or their decisions on other cases they heard about.

App. III at 654–56, 659–62.

After defense counsel objected to any further instructions to the jury, the Court advised the jury as follows:

It is the Court's job and only the Court to decide what rules of law to apply to this case. You must follow all of these rules. You may not follow some and ignore others. Even if you disagree or do not understand the reasons for these rules of law, you're bound by your oath that you took at the beginning of this trial to follow the rules of law that have been set forth in the instructions of this Court.

Members of the jury, in reaching a verdict, you may not consider the consequences of your verdict. Under your oath, as jurors, you cannot consider the punishment that may be imposed. The duty of imposing sentence rests exclusively with the Court.

Your function is to weigh the evidence and decide the issue of the defendant's guilt or non-guilt solely upon the evidence or lack of evidence and the law, which I have given to you and which you must apply.

In determining the facts you, the jury, are reminded that before each member of the jury was accepted and sworn to act as a juror, he or she was asked questions concerning competency, qualifications, fairness and freedom from bias or prejudice. On the faith of those answers, each juror was accepted by the parties. Therefore, those answers are binding on each of you jurors now as they were then and should remain so until the jury is discharged from consideration of this case.

One of those questions asked was "Do you have such strong feelings about the United States government, the criminal justice system, or the prosecution of criminal cases, that your feelings would prevent you from rendering a fair and impartial verdict in this case?"

Each of you answered, under oath, that you did not have such feelings. You were also asked "Do you have such strong feelings about the tax laws or the tax system of the United States or the Internal Revenue Service that your feelings would prevent you from rendering a fair and impartial verdict in this case?"

Each of you answered no, under oath, that you did not have those feelings. During the course of the trial, you received all of the evidence that you may properly consider to decide this case. Anything that you may have seen, or heard, or read, outside of the courtroom is not evidence and must be entirely disregarded.

Your decision in this case must be made solely on the evidence presented at the trial. You may also not consider anything you may have heard, or read, or read about in other court cases.

Prior to the start of this trial, an oath was administered to you. That oath

stated "You, and each of you, do solemnly swear by Almighty God that you will well and truly try this issue joined between plaintiff and defendant at Criminal No. 01–35 and a true verdict render according to the evidence and the law as given to you by the Court. So help you God."

Each of you has sworn to do that. It would be a violation of your duty under the law and your oath as jurors if you do not do that.

App. III at 673–75.

Following a suggestion from the government that Fed.R.Crim.P. 23(b) and 24(c)(3) permitted replacement if one or more jurors was unable to comply with the Court's instructions, the Court inquired as to whether any juror was unwilling or unable to follow its instructions. There were no positive responses.

The jury reached a verdict approximately 50 minutes later.

We do not view the District Court's supplemental instructions and question as coercive or in any other way inconsistent with the teachings of *United States v. Fioravanti*, 412 F.2d 407 (3d Cir.1969), and its progeny. The Court did nothing more than address the matters raised in the jury's note by "encourag[ing] [them] to fulfill their duty" and confirming that they remained willing and able to do so. *United States v. Eastern Medical Billing*, 230 F.3d 600, 615 (3d Cir.2000). Nor do we believe that the District Court handled the proceeding in a way that violated Fed. R.Evid. 606(b) or the principles announced in *United States v. Thomas*, 116 F.3d 606 (2d Cir.1997), and *United States v. Stansfield*, 101 F.3d 909 (3d Cir.1996). It did not inquire into the deliberations of the jury, and it did not respond to a jury note, like the one in *Thomas*, revealing the view of individual jurors about the sufficiency of the government's evidence. Contrary to

appellant's assertion, the Court's instructions did convey that being dead-locked was an acceptable result.

## II.

■ During closing argument, defense counsel referred to "lobbyists, who spend millions of dollars to influence the Congress of the United States to pass special rule to-." He was interrupted by the Court which characterized this as "improper argument" and suggested that counsel "go on to something else." Contrary to appellant's suggestion, the Court did not prevent defense counsel from making the point that the tax laws are complex. We perceive no impropriety.

Later, in the course of an argument that appellant honestly believed he was not a person required to file an income tax return, defense counsel referred to the *Dred Scott* decision and asserted that the Supreme Court there ruled in 1862 that a person of African descent was not a person. The Court sustained the government's objection. The Supreme Court's holding that Dred Scott "was not a citizen of Missouri within the meaning of the Constitution of the United States" was not relevant to any issue in this case, and counsel was not foreclosed from making his concededly relevant argument.

Appellant's final contention relates to a side comment made by defense counsel in the context of the following segment of argument:

If you'll recall, Mr. Stewart left his business card at the door at 565 Addison, where Mr. Stuler has lived for the last eighteen years. Although, the government would have you believe he's lived there for the last thirty-two years, because they got the wrong address on it. But that's okay. I mean, minor point.

You will see in all those exhibits that they say his address is 565 Addison. So, 1969, 1970, '71, '72, '73, '74, '75, '76, '77,- '78, '79, '80, he didn't move there until 1983. But, minor point. Anyway, he was there from 1983 on.

The trash. September of 1997. It wasn't even created until September of 1997. So, there it is. It says revised, September, 1997 right, right here on these hundred numbered pages from the trash. But Mr. Stuler had stopped filing in 1981. And, for whatever mistaken reason, the IRS says, well, he filed in 1982.

He, he didn't file in 1982, ladies and gentlemen. They got a piece of paper that somebody prepared somewhere because they're computer-made. Another mistake. That said that he filed and got a refund. And he didn't file and he didn't get a refund.

MR. DILLON: Your Honor, I have to object.

THE COURT: Sustained. There is no evidence of that. Don't argue things that aren't in evidence.

MR. COHAN: But I am going to argue the lack of evidence. The lack of evidence to prove beyond a reasonable doubt that Larry Stuler knew that he was a person required, because of all the evidence that you have before you, that Mr. Stuler didn't know that he was a person required.

Now, I am going to draw your attention to this special agent's report that I asked Mr. Stewart about. And, perhaps, you will recall that I drew his attention to page sixteen . . . .

App. III at 627–28.

The Court was correct that there was no evidence that Stuler had not filed an income tax return in 1982. An IRS records custodian testified that Stuler filed a tax return and obtained a refund in 1982.

This evidence was not challenged on cross-examination, and neither Stuler nor any other witness asserted that he did not file a tax return in 1982.

It is quite true, as appellant stresses, that counsel was entitled to argue that the government's evidence was insufficient to prove Stuler's knowledge of his duty to file beyond a reasonable doubt. But counsel was permitted by the Court to make that argument once he made it clear that he was not mischaracterizing the evidence, but rather arguing that the evidence on the point was mistaken. Moreover, given the context, the fact that Stuler had filed from 1969–1980, and the record as a whole, we are confident beyond a reasonable doubt that this ruling of the Court did not affect the outcome.

### III.

The judgment of the District Court will be affirmed.